Peter E. Strniste, Jr., Esq. (admitted *pro hac vice*)
Lori N. Brown, Esq. (SBN 8858)
**GORDON REES SCULLY MANSUKHANI, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: lbrown@grsm.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BOXABL INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN GARMAN,<br><br>Defendant. | Case No.: 2:23-cv-01213-RFB-NJK<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Boxabl Inc. (hereinafter "Boxabl"), by and through undersigned counsel, hereby files its First Amended Complaint and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Boxabl is a Nevada corporation with a principal place of business 5345 E. North Belt Road, North Las Vegas, NV 89115.

2. Defendant, Jonathan Garman, is an individual residing at 2480 Citrus Garden Circle, Henderson, NV 89052.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this Amended Complaint includes claims resulting from Defendant's violations of federal statutes, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq*. This Court has jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

4. Venue is proper in this Court as a relevant contract between the Plaintiff and Defendant includes a forum selection clause providing the Courts of the State of Nevada with exclusive jurisdiction over this matter.

5. Specifically, the separation agreement entered into between the parties ("Separation Agreement," annexed hereto as Exhibit B) provides that "[a]ny action or proceeding by either of the Parties to enforce this Agreement shall be brought in any state or federal court located in the state of Nevada, county of Clark." Further, the events which are the subject matter of the instant Amended Complaint occurred in Clark County, Nevada.

## GENERAL ALLEGATIONS

6. On or about September 27, 2022, Defendant accepted an offer of employment from Boxabl to work as Controller for Boxabl, starting on October 12, 2022.

7. In conjunction with acceptance of this offer of employment, Defendant executed a Confidentiality and Non-Solicitation Agreement with Boxabl on September 30, 2022. (Exhibit A - "Confidentiality Agreement").

8. Pursuant to the terms of the Confidentiality Agreement, Defendant agreed, among other things, that during and after his employment with Boxabl he would "…hold in trust, keep confidential, and not divulge, furnish, sell, or make accessible to any person any Confidential Information or Trade Secrets…," as defined in the Confidentiality Agreement. (Ex. A).

9. Defendant also agreed in the Confidentiality Agreement:

SECTION 1. Confidentiality of Confidential Information and Trade Secrets.

(a) …during your employment with Boxabl, and during the Reasonable Duration, you will … use the Confidential Information and Trade Secrets solely for the purpose of performing your duties of employment and not for your own benefit or the benefit of any other Person. **You are not permitted to access any Boxabl information, including but not limited to Confidential Information and Trade Secrets, unless you have been authorized and directed to access such information by Boxabl, or you have a direct business need to access such information in the furtherance of your job duties…**.

(b) **You shall be permitted to disclose Confidential Information or Trade Secrets to the extent, but only to the extent, (A) Boxabl provides its express prior written consent to such disclosure, (B) necessary to perform the duties of your employment**; or (C) required by law; provided, that prior to making any disclosure of Confidential Information or Trade Secrets (whether pursuant to a deposition, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand, or other similar process), you notify Boxabl of your intent to make such disclosure, so that Boxabl may seek a protective order or other appropriate remedy and may participate with you in determining the amount and type of

> Confidential Information or Trade Secrets, if any, which must be disclosed in order to comply with applicable law.

(emphasis added).

10. On or about March 10, 2023, Boxabl terminated Defendant due to performance problems.

11. On or about March 10, 2023, Boxabl offered Defendant a separation agreement (Exhibit B – "Separation Agreement"), in which he would receive monetary compensation in exchange for various promises. Defendant accepted this offer and executed the Separation Agreement.

12. The Separation Agreement specifically stated that the Defendant "…understands and acknowledges that the requirements of the Confidentiality and Non-Solicitation Agreement remain in full force and effect…," and that "[t]he content of the Confidentiality and Non-Solicitation Agreement is integrated into this [Separation] Agreement as if set forth fully herein." (Ex. B).

13. Defendant further agreed that he "…agrees not to make any critical, derogatory, reckless, malicious, or untruthful statement of fact about the Employer Group, or about Employee's past employment with the Employer Group, to any of the Employer Group's past, present or future clients, competitors, employees, or any other person (including, but not limited to, the press or other media), or any critical, derogatory, reckless, malicious, or untruthful statement designed to cause financial or reputational harm to the Employer Group or its employees." (Ex. B).

14. In support of the Separation Agreement, Defendant executed an affidavit (Exhibit C – "Affidavit") under the penalty of perjury indicating that "[o]n September 30, 2022, as a condition of my employment with Boxabl, I executed a Confidentiality and Non-Disclosure Agreement. The terms of that Confidentiality and Non-Disclosure Agreement remain in full force and effect today, and will continue after the termination of my employment with Boxabl, as outlined more fully in the Confidentiality and Non-Disclosure Agreement."

15. The Defendant went on to indicate in the Affidavit that "[a]s of this date, I have not violated any of the terms of the Confidentiality and Non-Disclosure Agreement." (Ex. C).

16. During and since Defendant's employment as Controller, Boxabl came to learn that Defendant engaged in conduct that violated the Confidentiality Agreement and/or the Separation Agreement (see Exhibit D), including:

   a. Accessing Confidential Information, sensitive information and documents which Defendant did not have authorization to access;

   b. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, the salaries of Boxabl leadership personnel;

   c. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, Boxabl's financial holdings/assets and Boxabl's ability to sustain its operations, including an estimate of how long;

   d. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, the salaries and/or Boxabl stock holdings of non-leadership Boxabl employees;

   e. Defendant described to Boxabl employees how he believed Boxabl stock was "diluted and overvalued;"

   f. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, what other Boxabl employees were receiving as Christmas bonuses;

   g. Defendant described to Boxabl employees how he believed their Boxabl stock options would be worth only $20 in the future;

   h. Defendant described to Boxabl employees that Boxabl was going to fail and go bankrupt;

   i. Non-protected disclosure to Boxabl employees, outside the course and scope of his role as Controller, of Boxabl financial activities that did not concern the employees receiving this information, and that were made in the course of disparaging Boxabl;

j. Defendant described to Boxabl employees how he believed their jobs were going to be "outsourced" and that they should quit.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

17. Boxabl incorporates by reference the averments of Paragraphs 1 through 15 above as though the same were fully set forth herein.

18. As described above, Defendant entered into a Confidentiality Agreement and a Separation Agreement with Boxabl.

19. Both the Confidentiality Agreement and Separation Agreement contained provisions prohibiting Defendant from disclosing Confidential Information or Trade Secrets of Boxabl, without authorization.

20. Through the conduct described above, Defendant breached the terms of the Confidentiality Agreement and Separation Agreement, by and through his disclosure of the information referenced.

21. Through the conduct described above, Defendant breached the terms of the Confidentiality Agreement and Separation Agreement, by and through his critical, derogatory, reckless, malicious, or untruthful statements of fact about Boxabl.

22. Through his breach of the aforementioned agreements, Defendant has caused Boxabl harm including but not limited to financial harm, reputational harm, compromised its Confidential Information and Trade Secrets, and damaged its goodwill with the public, customers, and investors.

23. At no time has Boxabl breached any of the terms of the Confidentiality Agreement or Separation Agreement.

### SECOND CLAIM FOR RELIEF
(Violation Of Computer Fraud & Abuse Act, 18 U.S.C. § 1030, et seq.)

24. Plaintiff incorporates by reference the averments of Paragraphs 1 through 22 above as though the same were fully set forth herein.

*Gordon Rees Scully Mansukhani, LLP*
*300 S. 4th Street, Suite 1550*
*Las Vegas, NV 89101*

25. In violation of 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4), which are actionable civilly pursuant to 18 U.S.C. §1030(g), Defendant intentionally and deceptively accessed Boxabl's confidential, proprietary, and trade secret information on computer systems belonging to Boxabl for the express and unauthorized purpose of accessing, obtaining, downloading, and/or retaining such information.

26. Defendant's accessing of Boxabl's information for the purpose of accessing, securing, and transmitting Boxabl's confidential, proprietary, and trade secret information was unauthorized by Boxabl and/or exceeded the scope of Defendant's authorization; was contrary and in violation of the Confidentiality Agreement and Separation Agreement; and was done for the sole benefit of Defendant. Defendant acted with no business purpose that could possibly benefit Boxabl and was not acting in the course of his employment.

27. Defendant's access, use, and/or transmission of much of this information was entirely unauthorized and/or exceeded the scope of his authorization, and was detrimental and contrary to any legitimate business purpose of Boxabl.

28. Defendant's access to Boxabl's computer systems, electronically stored information and files, as described above, included access to certain individual employee-level data and executive level data, which data was entirely irrelevant to the Defendant's prior scope of employment as Controller for Boxabl, and was unauthorized and/or exceeded the scope of the Defendant's authorization.

29. The computer and/or computer systems intentionally accessed and used by Boxabl were "protected computers" within the meaning of 10 U.S.C. § 1030, et seq., because they were used in interstate commerce and communication, including, but not limited to, for communicating and maintaining information regarding numerous customers and/or customer locations with which Boxabl was engaged in interstate commerce. Defendant downloaded, retained, and/or transmitted the information without authorization, and that information was transmitted from and through an email and/or computer system that caused the interstate transmission and communication of said information.

30. Defendant's actions were intentional and were taken deliberately, maliciously, wantonly, fraudulently, deceptively, and/or with reckless and deliberate disregard for Boxabl's lawful rights, and without privilege or justification.

31. Defendant's unauthorized access of Boxabl's computer and computer systems and electronic data and files for the purposes of taking and transmitting Boxabl's trade secrets and/or confidential and proprietary information has caused and/or will cause Boxabl significant losses, far in excess of the jurisdictional minimum established by the CFAA.

32. As a result of Defendant's unauthorized access of Boxabl's computer and computer systems, Boxabl has had to expend costs far exceeding $5,000 by undoing the damage caused to Boxabl by Defendant's offending conduct described herein.

33. As a result of the Defendant's offending conduct as described herein, at least one former Boxabl employee resigned from Boxabl. Boxabl paid a $10,000 recruiter fee in connection with this former employee's employment with Boxabl. Boxabl was entitled to recoup this recruiter fee upon the employee's resignation, but has been unable to do so.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, Boxabl Inc., demands judgment in its favor and against the Defendant Jonathan Garman, and respectfully requests the following relief:

A. Permanent injunctive relief:

    a. Enjoining Defendant from removing, using or destroying any information obtained by Defendant from Boxabl or work done by Boxabl;

    b. Ordering Defendant to turn over to Boxabl any and all devices to which he copied Boxabl confidential, trade secret and/or proprietary information or other Boxabl data and to turn over any and all copies of all such information or other data that Defendant removed from Boxabl;

    c. Ordering Defendant from further utilizing, disclosing or revealing any of Boxabl's information, confidential documents or data.

      d. Enjoining Defendant from using or disclosing Boxabl's trade secrets or proprietary and confidential information to the benefit of anyone other than Boxabl; and

      e. Enjoining Defendant from making any posts on social media that include any information about Boxabl, its personnel, its products, its operations, its finances, its investors, its customers, or any other facts concerning Boxabl;

B.     Any actual damages, to the extent such damages are capable of being calculated, that Boxabl is entitled to recover as a result of Defendant's actions as set forth above;

C.     Attorneys' fees pursuant to the Confidentiality Agreement and Separation Agreement;

D.     Common law interest;

E.     Punitive Damages;

F.     The costs and fees of these proceedings; and

G.     All such other relief as this Court deems appropriate, including, without limitation, attorneys' fees.

DATED this 23rd day of February 2024.

                                        GORDON REES SCULLY MANSUKHANI, LLP

                                        */s/ Peter E. Strniste, Jr.*
                                        Peter E. Strniste, Jr., Esq.
                                        (admitted *pro hac vice*)
                                        GORDON REES SCULLY MANSUKHANI LLP
                                        300 S. 4th Street, Suite 1550
                                        Las Vegas, NV 89101

                                        *Attorneys for Boxabl Inc.*

**EXHIBIT LIST**

A. Confidentiality Agreement executed by and between Boxabl Inc. and Jonathan Garman

B. Separation Agreement executed by and between Boxabl Inc. and Jonathan Garman

C. Affidavit executed by Jonathan Garman

D. Boxabl Inc.'s Investigation Notes regarding Jonathan Garman's Misconduct