David M. Doto (11796)
Robert E. Werbicky (6166)
Shelby A. Dahl (13856)
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada  89145
Telephone:     (702) 385-2500
Facsimile:     (702) 385-2086
ddoto@hutchlegal.com
rwerbicky@hutchlegal.com
sdahl@hutchlegal.com

*Attorneys for Jonathan Garman*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BOXABL INC., | CASE NO.:  2:23-cv-01213-RFB-NJK |
| Plaintiff, | |
| v. | **MOTION TO DISMISS BOXABL'S VIOLATION OF COMPUTER FRAUD & ABUSE ACT** |
| JONATHAN GARMAN, | |
| Defendant. | |

Jonathan Garman ("Garman") hereby moves pursuant to Fed. R Civ. Proc. 12(b)(6) for the dismissal of Boxabl, Inc.'s ("Boxabl") Violation Of Computer Fraud & Abuse Act ("CFAA"). *See* ECF No. 43 at ¶¶ 24-33.  This is the second time Garman has moved to dismiss this fatally defective CFAA claim, as Boxbl still has not plead an actionable claim in its First Amended Complaint.

## I.    GENERAL BACKGROUND

Little has changed from Boxabl's original complaint.  Boxabl alleges[1] that Garman previously worked as Boxabl's controller.  *Id.* at ¶ 6.  On September 30, 2022, <u>before</u> Garman began working at Boxabl, he signed a Confidentiality Agreement.  *Id.* at ¶ 6-7.  The

---

[1] Garman will not dispute Boxabl's factual allegations for the purposes of this motion.

1  Confidentiality Agreement states, "You are not permitted to access any Boxabl information,

2  including but not limited to Confidential Information and Trade Secrets, unless you have been

3  authorized and directed to access such information by Boxabl, or you have a direct business

4  need to access such information in the furtherance of your job duties." *Id.* at ¶ 9.

5      Garman began working for Boxabl on October 12, 2022. *Id.* at ¶ 6. It was presumably

6  at this point, if not later, that Garman was given access to Boxabl's computer system. By

7  granting Garman access to its computer system, Boxabl authorized and directed Garman to use

8  that computer system under the terms of the Confidentiality Agreement. Boxabl fails to allege

9  any subsequent limitations on the authorizations or directions Boxabl gave to Garman about the

10  use of Boxabl's computer system.

11      Boxabl alleges that Garman "[a]ccess[ed] Confidential Information, sensitive

12  information and documents which [he] did not have authorization to access." *Id.* at ¶ 16(a).

13  The First Amended Complaint fails to identify the alleged confidential or sensitive information

14  purportedly at issue[2]; rather, it proffers a transparently weak and vague allegation that it was

15  "certain individual employee-level data and executive level data, which data was entirely

16  irrelevant to the Defendant's prior scope of employment as Controller for Boxabl." *Id.* at ¶ 28.

17  Moreover, the only confidential information Boxabl references within the First Amended

18  Complaint that Garman allegedly accessed would appear to be the exact type of information that

19  a controller responsible for Boxabl's operations would need to obtain: salaries, stock holdings,

20  and bonuses of Boxabl personnel, Boxabl's financial holdings/assets, and Boxabl's ability to

21  sustain its operations. *Id.* at ¶ 16.

22      Boxabl's CFAA claim is entirely based on Garman's alleged violation of his

23  Confidentiality Agreement regarding what Boxabl information he could access. There is no

24  allegation that Garman **hacked** or **trespassed** into any system or files. There is not even an

25  allegation that Garman violated any type of computer policy or procedure for his access to

26

---

27  [2] To the extent Boxabl intends to rely on the attachments to the First Amended Complaint to
    flesh out its allegations, the Court already stated at the February 13, 2024 hearing that the Court
28  would not consider matters or allegations outside those pled specifically within the complaint.

Boxabl's computer system.  Boxabl does not mention, much less describe, where the information was or how Garman accessed it.  From the face of the complaint, it appears that Boxabl is admitting, once again, that Garman had full access to Boxabl's computer system and all files as part of his work as controller.  Thus, Boxabl fails to allege any CFAA violations.

Boxabl also fails to allege it has suffered any damages that would be recoverable under the CFAA.  Boxabl only claims that due to Garman's alleged conduct, "at least one former Boxabl employee resigned from Boxabl. Boxabl paid a $10,000 recruiter fee in connection with this former employee's employment with Boxabl. Boxabl was entitled to recoup this recruiter fee upon the employee's resignation, but has been unable to do so." *Id.* at ¶ 33.  Boxabl's only claimed damage appears to be related to the alleged *disclosure* of information, *not* Garman merely *accessing* the information.  Boxabl has alleged no damage to any computer system or files that it has had to mitigate.  Nor could it, since it is apparent that Garman did not damage Boxabl's system and files by using his *rightful* access.

*This is the exact same CFAA claim the Court has already dismissed*.  *See* ECF No. 42. Boxabl's opposition to Garman's previous motion to dismiss raised all the points asserted in the First Amended Complaint.  *See* ECF 27 at 5:17-8:2.  Nothing substantive has been added. Therefore, the claim should be dismissed without leave to amend.

## II.    LEGAL ARGUMENT

### A.    The Standard of Dismissal Under FRCP 12(b)(6)

A party may seek the dismissal of a claim under Rule 12(b)(6). To survive a motion to dismiss, enough facts must be pleaded to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The plausibility standard requires the claimant to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678–79, 129 S.Ct. 1937.

1  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

2  conclusory statements, do not suffice." *Id.* at 678, 129 S.Ct. 1937.

3      Although the scope of review on a motion to dismiss for failure to state a claim is

4  generally limited to the Complaint, a court may consider evidence on which the complaint

5  necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the

6  plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

7  motion." *Daniels—Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal

8  quotations and citations omitted). The court may treat such a document as part of the complaint,

9  and thus may assume that its contents are true for purposes of a motion to dismiss under Rule

10  12(b)(6). *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (*quoting United States v. Ritchie*,

11  342 F.3d 903, 908 (9th Cir. 2003)).

12      **B.    Boxabl fails to allege violations of the CFAA.**

13      The CFAA is a criminal statute that allows for civil recovery under certain

14  circumstances.  Even in cases seeking civil recovery, any "ambiguity concerning the ambit of"

15  this statute "should be resolved in favor of lenity."  *LVRC Holdings LLC v. Brekka*, 581 F.3d

16  1127, 1134–35 (9th Cir. 2009), quoting *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir.

17  2008).  To successfully allege an action under 18 U.S.C. § 1030(g) based on a violation of 18

18  U.S.C. § 1030(a)(2), Boxabl must plausibly allege that Garman: -- (1) intentionally accessed a

19  computer, (2) without authorization or exceeding authorized access, and that he (3) thereby

20  obtained information, (4) from any protected computer (if the conduct involved an interstate or

21  foreign communication), and that (5) there was loss to one or more persons during any one-year

22  period aggregating at least $5,000 in value.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127,

23  1132 (9th Cir. 2009).

24      Boxabl has failed to allege that Garman acted without authorization or exceeded his

25  authorization and that Boxabl suffered a compensable loss.  Therefore, Boxabl's CFAA claim

26  should be dismissed.

27

28

**1.      Boxabl fails to allege that Garman acted without authorization or exceeded his authorization as defined by the CFAA.**

As discussed in Garman's previous motion to dismiss, the CFAA is best understood as an anti-intrusion statute and not as a "misappropriation statute," *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022).  The CFAA is designed to deter both outside hackers who break into computer systems without any authority, and inside hackers who exceed the authority granted them by infiltrating areas of the system they are not authorized to enter. *See Van Buren v. United States*, 210 L. Ed. 2d 26, 141 S. Ct. 1648, 1658-59 (2021) (discussing the "exceeds authorized access" language of the statute).

A person uses a computer "without authorization" when he "has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *LVRC Holdings LLC v. Brekka*, 581 F.3d at 1135.  "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer -- such as files, folders, or databases -- that are off limits to him." *Van Buren v. United States*, 210 L. Ed. 2d 26, 141 S. Ct. 1648, 1662 (2021).  This is a "a gates-up-or-down inquiry -- …one either can or cannot access certain areas within the system." *Id.* at 1649.  Improper motive does not, by itself, result in a CFAA violation. *Id.* at 1659-62.  Mere "violations of corporate computer use restrictions <u>or violations of a duty of loyalty</u>" do not violate the CFAA.  *U.S. v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (emphasis added).  This is because "[e]mployer-employee and company-consumer relationships are traditionally governed by tort and contract law," and attempting to expand the CFAA's reach "allows private parties to manipulate their computer-use and personnel policies so as to turn these relationships into ones policed by the criminal law." *Id.* at 860.

***Boxabl is attempting to do exactly what Nosal warns against -- manipulate its Confidentiality Agreement to subject Garman to the threat of criminal law***.  There is no legal basis for this claim.  There is only the intent to threaten and harass Garman.  He did not access any Boxabl computer or system without authorization.  He was not an outside hacker.  Boxabl clearly gave him permission and did not rescind it until he was terminated from Boxabl.

Nor did Garman exceed his authority.  He was not an inside hacker.  Boxabl has failed to allege that Garman, for example, accessed any part of the system or files that required passwords or administrative authority that Garman did not have.  Garman had full access to Boxabl's computer system with Boxabl's permission -- the gates were up, and Garman walked through.

Even under Boxabl's incorrect interpretation of the CFAA, it has failed to plead a violation of the statute.  Boxabl alleges that under its Confidentiality Agreement, a private agreement the CFAA should not be invoked to enforce, Garman was "not permitted to access any Boxabl information, including but not limited to Confidential Information and Trade Secrets, unless [he had] been authorized and directed to access such information by Boxabl, or [he had] a direct business need to access such information in the furtherance of [his] job duties." *See* ECF No. 43 at ¶ 9.  ***But Garman was "authorized and directed" to access Boxabl's confidential information and trade secrets 12 days after signing the Confidentiality Agreement, when he began working for Boxabl as its controller and was granted access to its computer system***.  *Id.* at ¶ 6.  The Confidentiality Agreement required Boxabl to grant Garman authority and access to its information, ***which Boxabl then did***.

There is no allegation that Boxabl then somehow limited Garman's access to its computer system that would give rise to a CFAA violation, such as installing firewalls or password protections to keep Garman only to certain places or files.  Boxabl does not even allege what information Garman could not access or where it was located, except a vague allegation that it was "certain individual employee-level data and executive level data, which data was entirely irrelevant to the Defendant's prior scope of employment as Controller for Boxabl."  *See* ECF No. 43 at ¶ 28.  This is not a factual allegation that plausibly states a claim sufficient to survive a motion to dismiss under *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Instead, it is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" which "do not suffice." *Id.*

A tortured reading of the Confidentiality Agreement, which was clearly meant as a general statement of policy rather than a detailed description of Boxabl's computer policies, cannot save Boxabl's CFAA claim.  Nor should Boxabl be granted any further opportunity to amend its complaint to try to address its deficiencies.  Boxabl was already granted leave to

amend this claim with a clear signal from the Court as to its deficiencies.  *See* ECF No. 42.
Boxabl failed to correct any of them, because they cannot be corrected.  Therefore, Boxabl's
CFAA claim should be dismissed.

**2.      Boxabl fails to allege that Garman acted without authorization or exceeded his authorization as defined by the CFAA.**

A viable CFAA claim requires an alleged loss or damage in excess of $5,000.00.  *NLRK, LLC v. Indoor Ag-Con, LLC*, 2022 WL 293252, at *6 (D. Nev. 2022).  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of ***responding to an offense***, ***conducting a damage assessment***, and ***restoring the data***, program, system, or information to its condition prior to the offense, and any ***revenue lost***, ***cost incurred***, or other consequential damages ***incurred because of interruption of service***." 18 U.S.C. § 1030(e)(11) (emphasis added). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

Damages in CFAA actions typically relate to damages caused by hacking and malware which includes system repair and damages caused by interruption of service owing to system downtime.  In *NLRK* the party alleged it:

> suffered damage and loss, including without limitation, (i) impairment to the integrity and availability of [its] confidential client list; (ii) expenses involved in investigation of [the] improper and unauthorized access; and (iii) lost business opportunities, profits and other damages in amounts to be determined at trial," and that the "unlawful access to and theft" has caused "irreparable injury in that the confidentiality of the client list has been compromised, and no amount of money can restore the breached confidentiality of the client list.

*NLRK*, 2022 WL 293252, at *6.  Despite this detail, the court ruled that the party had not "plausibly alleged a loss of at least $5,000 to give rise to a civil action under the CFAA."  *Id.*

Boxabl does not claim that there was any system hack, installed malware, interruption of service, or any other damage permitted under the CFAA.  Instead, Boxabl alleges only that due to Garman's alleged conduct, "at least one former Boxabl employee resigned from Boxabl. Boxabl paid a $10,000 recruiter fee in connection with this former employee's employment with

Boxabl. Boxabl was entitled to recoup this recruiter fee upon the employee's resignation, but has been unable to do so." *See* ECF No. 43 at ¶ 33. This is not a damage or loss under the CFAA. It has nothing to do with the integrity of Boxabl's system or any interruption of service. At most, this appears to be related to Garman allegedly sharing information, not the act of him obtaining it. In addition, the alleged damages did not even come from Garman or the employee leaving -- it has to do with Boxabl being unable to recover a recruiter fee that it claims it is entitled to, which would be an entirely separate case against some other person based on some other contract.

Thus, Boxabl's allegations do not plausibly allege it suffered a loss of at least $5,000.00 that would be covered by the statute. Boxabl does not, and cannot, adequately plead a CFAA violation.

## III.     CONCLUSION

Boxabl alleges that Garman was hired as its controller and had access to confidential and trade secret information in the performance of his duties. It is unquestionable that Garman properly accessed Boxabl's information, despite Boxabl's attempt to twist its Confidentiality Agreement into the basis for criminal action. As such, Garman requests this Court dismiss Boxabl's CFAA claim without leave to amend.

DATED: 1st day of March, 2024.

HUTCHISON & STEFFEN, PLLC

*/s/ Shelby A. Dahl*

_____
David M. Doto (11796)
Robert E. Werbicky (6166)
Shelby A. Dahl (13856)
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

*Attorneys for Jonathan Garman*

8

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC

and that on this 1ˢᵗ day of March, 2024, I caused the above and foregoing documents entitled

**MOTION TO DISMISS BOXABL'S VIOLATION OF COMPUTER FRAUD & ABUSE**

**ACT** to be served via the Court's CM/ECF electronic system on each of the following:

**Cara Sgobba**                                                  **Lori N. Brown**
Gordon Rees Scully Mansukhani                    Gordon Rees Scully Mansukhani, LLP
28 State Street, Suite 1050                          2 North Central Ave., Ste. 2200
Boston, MA 02109                                       Phoenix, AZ 85004
Email: csgobba@grsm.com                           Email: lbrown@grsm.com

**Peter E. Strniste , Jr.**
Gordon & Rees LLP
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
Email: pstrniste@grsm.com


                                        */s/ Suzanne Morehead*
                                        _____
                                        An employee of Hutchison & Steffen, PLLC