Peter E. Strniste, Jr., Esq. (admitted *pro hac vice*)
Lori N. Brown, Esq. (SBN 8858)
Cara M. Sgobba, Esq. (admitted *pro hac vice*)
**GORDON REES SCULLY MANSUKHANI, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: pstrniste@grsm.com
lbrown@grsm.com
csgobba@grsm.com
*Attorneys for Boxabl*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BOXABL INC., | Case No.: 2:23-cv-01213-RFB-NJK |
| Plaintiff, | **PLAINTIFF'S MOTION FOR DISQUALIFICATION OF DEFENDANT'S COUNSEL AND FOR SANCTIONS AND TO EXCLUDE EVIDENCE** |
| vs. | |
| JONATHAN GARMAN, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff, Boxabl Inc. ("Plaintiff" or "Boxabl"), by and through its undersigned counsel of record, hereby submits this Memorandum of Points and Authorities in support of its Motion for Disqualification and for Sanctions and to Exclude Evidence. For the reasons set forth herein, Boxabl respectfully requests that this Court ALLOW its Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    BACKGROUND**

**A.  Case Facts**

Boxabl is a housing manufacturer specializing in what are commonly known as modular, manufactured or prefabricated homes. On or about September 27, 2022, Defendant, Jonathan

Garman ("Garman"), accepted an offer of employment from Boxabl to work as its Controller starting on October 12, 2022. *Amended Complaint (ECF No. 43),* ¶ 6. In conjunction with acceptance of this offer of employment, Defendant executed a Confidentiality and Non-Solicitation Agreement with Boxabl on September 30, 2022. ("Confidentiality Agreement"). *Id.* at ¶ 7, *Id.* at Exhibit A.  Pursuant to said Confidentiality Agreement, Garman acknowledged, *inter alia*, as follows:

> SECTION 1. Confidentiality of Confidential Information and Trade Secrets.
>
> (a) …You are not permitted to access any Boxabl information, including but not limited to Confidential Information and Trade Secrets, unless you have been authorized and directed to access such information by Boxabl, or you have a direct business need to access such information in the furtherance of your job duties….
>
> (b) You shall be permitted to disclose Confidential Information or Trade Secrets to the extent, but only to the extent, (A) Boxabl provides its express prior written consent to such disclosure, (B) necessary to perform the duties of your employment; or (C) required by law …

.*Id.* at ¶ 9.

On or about March 10, 2023, Boxabl terminated Garman due to performance problems. *Id.* at ¶ 10.  Upon said termination, the parties negotiated and agreed that Garman would receive monetary compensation from Boxabl in the amount of $50,000.00 so long as Garman was able to warrant and affirm under oath and agree he had not violated the Confidentiality Agreement during his tenure at Boxabl and would continue to abide by the same following his termination. *Compl.* at ¶¶ 11-15.  This agreement was memorialized in a written Separation Agreement executed by Garman on March 10, 2023, along with an affidavit in which Garman swore under oath that he had "not violated any of the terms of the Confidentiality and Non-Disclosure Agreement" that he signed under the penalties of perjury on September 30, 2022.  *See Id.* at ¶¶ 11-15; Exhibits B and C.

Mr. Garman represented in Paragraph 1 of his Separation Agreement that "**The Employee warrants and represents that <u>they have returned all Employer Group property</u>, including identification cards or badges, access codes or devices, keys, laptops, computers, telephones, mobile phones, hand-held electronic devices, credit cards <u>electronically stored documents or files, physical files</u>, and any other Employer Group property in the Employee's possession.**" (emphasis added).[1]  Garman's representations were false; and Mr. Garman produced with his initial disclosures in this case Boxabl documents he took with him when he left the company, and subsequently produced 72,000 Boxabl files he downloaded before his termination (as discussed below) unequivocally establishing that he violated his agreements with the company and that his representations in the Separation Agreement and his statements in his affidavit were blatantly false.

Following Garman's termination, Boxabl learned that Garman had engaged in a pattern of conduct that constituted repeated violations of the Confidentiality Agreement and the Separation Agreement, and federal law including, but not limited to:

a.  Accessing Confidential Information, sensitive information and documents which Defendant did not have authorization to access;

b. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, the salaries of Boxabl leadership personnel;

---

[1]  Notably, the Separation Agreement, signed by Mr. Garman on the day of his termination, clearly provides "[t]his Agreement**, for all purposes**, shall be construed in accordance with the laws of Nevada without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. **Any action or proceeding by either of the Parties to enforce this Agreement shall be brought in any state or federal court located in the State of Nevada, county of Clark.**" (emphasis added).  The Separation Agreement also contains an integration clause, which states that the Separation Agreement "supersedes all prior and contemporaneous understandings, discussions, agreements including representations and warranties, both written and oral."

-3-

c. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, Boxabl's financial holdings/assets and Boxabl's ability to sustain its operations, including an estimate of how long;

d. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, the salaries and/or Boxabl stock holdings of non-leadership Boxabl employees;

e. Defendant described to Boxabl employees how he believed Boxabl stock was "diluted and overvalued;"

f. Disclosure to Boxabl employees, outside the course and scope of his role as Controller, what other Boxabl employees were receiving as Christmas bonuses;

g. Defendant described to Boxabl employees how he believed their Boxabl stock options would be worth only $20 in the future;

h. Defendant described to Boxabl employees that Boxabl was going to fail and go bankrupt;

i. Non-protected disclosure to Boxabl employees, outside the course and scope of his role as Controller, of Boxabl financial activities that did not concern the employees receiving this information, and that were made in the course of disparaging Boxabl;

j. Defendant described to Boxabl employees how he believed their jobs were going to be "outsourced" and that they should quit.

ECF No. 43 at ¶ 16.  Further details on Garman's misconduct are set forth in Boxabl's investigation notes appended to the Complaint.  *Id.* at Exhibit D.

In addition to seeking a monetary judgment, pursuant to its now operative First Amended Complaint filed February 23, 2024, Boxabl seeks permanent injunctive relief enjoining the Defendant from further harmful use or disclosure of the confidential, trade secret or proprietary information obtained.  *Amended Complaint (ECF No. 43),* p. 7-8.

**B.  Procedural Background**

Since Boxabl filed its original complaint in June 2023 in Nevada state court, the case was removed by Garman to federal court. (See, ECF No. 1). Following a period of motion practice by Garman, on February 23, 2024, Boxabl filed its Amended Complaint asserting claims against Garman for two causes of action (1) Breach of Contract; and (2) Violation of Computer Fraud & Abuse Act, 18 U.S.C. § 1030, et seq. ("CFAA Claim"). (ECF No. 43).

On April 1, 2024, the parties exchanged initial disclosures pursuant to Fed.R.Civ.P. 26 (f) and Local Rule 26-1. With its initial disclosures Mr. Garman submitted a collection of documents establishing that he retained certain internal email communications between himself and other employees of Boxabl from Boxabl's internal email server.  Such sensitive communications included internal email correspondence concerning Garman' financial projections of Boxabl, his negative assessment of certain Boxabl products as conveyed to his coworkers, Garman's and Boxabl's use of payroll data, Boxabl's securities practices, Boxabl's calculation of certain employee bonuses, Boxabl's internal communications regarding accounting and employee compensation.  Such disclosures establish that Garman violated the Confidentiality and Separation Agreements.  The content of these email exchanges that Garman produced do not appear complete.

On or about April 3, 2024, Boxabl noticed three depositions, one of Defendant Garman and the remaining two of third party witnesses -- one of whom was Gregory Ehlers. Gregory Ehlers is a disgruntled former employee of Boxabl who made numerous misrepresentations to Boxabl about his qualifications and background (including the representation that he was a law school graduate and that he had been the CFO of several entities that were really limited liability companies he formed that did no real business) and was ultimately terminated by Boxabl for performance issues, after several bad acts.  Ehlers, anticipating that his termination was imminent, began downloading Boxabl documents to a hard drive, sabotaging Boxabl's relationships with vendors and customers, including the United States government, and attempted to manufacture a whistle blower complaint to the SEC.  There is a legal action pending between Mr. Ehlers and Boxabl in the Eighth Judicial District Court of Clark County Nevada (Docket No.: A-21-844394-C).  **By no coincidence, Mr. Ehlers is represented by the**

**same counsel, Hutchison & Steffen ("H&S") that represents Mr. Garman in the present case.**

Both Garman and Ehlers through counsel objected strenuously to the taking of their depositions and related discovery against them in this action.  Garman filed a series of Motions for Protective Orders on or about May 2, 2024. (ECF No. 53, 54, 58, 59). Ehlers filed his own Motion for Protective Order on June 4, 2024. (ECF No. 68). These Motions are currently under advisement with the Court.[2]

**C. Communications Protected by the Attorney Client Privilege and Documents Protected by the Attorney Work Product Doctrine Discovered in the Possession of H&S and Garman**

On May 20, 2024, Garman produced his Answers to Plaintiff's First Set of Interrogatories, and his Responses to Plaintiff's First Set of Requests for Production of Documents**.** *See* **Exhibit A; Exhibit B.** These discovery responses demonstrate , not only that Defendant is withholding an egregious amount of responsive information relevant to Plaintiff's breach of contract claim, but also that Mr. Garman misappropriated **over 72,000 computer files** comprising of **at least 53,301 pages of documents or ESI** from Boxabl's servers or computers by surreptitiously downloading this data before being terminated from Boxabl's employ. These documents include draft agreements with vendors, employee salary information, sales data, legal retention agreements, legal bills, communications from legal counsel to Boxabl and many other documents containing highly sensitive information, attorney work product and attorney client protected communications. Garman admits to having downloaded and retained much of

---

[2] Plaintiff produced its first set of documents on June 5, 2024 and filed its Motion for Leave to File Surreply and proposed Surreply to Garman's motion for protective order on June 12, 2024, seeking to bring Garman's discovery responses to the Court's attention before a final decision was made on Garman's Motions for Protective Orders.

these copious, sensitive documents from Boxabl, further violating the terms of his Confidentiality Agreement and Separation Agreement with Boxabl **and demonstrating that statements set forth in his sworn affidavit at the time of his termination were false.** *See e.g.,* **Exhibit A** - *Garman Answers to Interrogatories* at Int. No. 12[3]; *Amended Complaint (ECF No. 43) at Exhibit C.*

Most troubling, and most relevant to the instant motion, is Plaintiff's recent discovery of at least 150 attorney-client privileged documents amongst the documents produced by Garman, including attorney billing summaries, correspondence, emails, invoices **and drafts of documents relevant to the ongoing litigation.**[4] *See* **Exhibit C –***Spreadsheet Summarizing Privileged Information.* These documents provide Mr. Garman and his counsel with an unobstructed portal into Boxabl's attorneys' impressions on a wide variety of legal matters related to the case at bar, their litigation strategies, and analyses of other key issues. Contained within the privileged documents is at least one draft of a Mutual Dispute Resolution Agreement with extensive redlines by Plaintiff's counsel, and which contains the impressions of counsel regarding the enforceability of the individual provisions of the Agreement and the legal strategy

---

[3] This Interrogatory and answer thereto reads in relevant part:
 "INTERROGATORY NO. 12: Did you download any documents in any ESI format from Boxabl's servers or computers while you were employed at Boxabl. If so, describe each such document and state the reason you downloaded each such document.
RESPONSE TO INTERROGATORY NO. 12: See DEF000385–DEF053686. These documents speak for themselves, and describing each of them would be unduly burdensome. Defendant downloaded these documents as part of his work as Boxabl's controller. He had proper access to all of these documents within the scope of his job duties. Defendant needed to access Boxabl's data at home on his personal computer because Defendant often did work at nights and on weekends as it was expected by the company leadership. For example, he would routinely get phone calls on weekends from Hamid Firooznia asking about specific documents or transaction reports."

[4]  Counsel for Boxabl's review of the 72,000 files produced by Mr. Garman continues and additional privileged documents are expected to be identified.

behind the inclusion and exclusion of certain language.  With this information in hand, on June 25, 2024, Garman made a formal request to enforce the Arbitration Agreement, and on June 26, 2024, filed an Emergency Motion to Compel Arbitration. *See* **Exhibit D – Letter re: Enforcement of Arbitration Agreement;** *Motion to Compel Arbitration***,** (ECF No. 80).

On June 27, 2024 in the course of reviewing Garman's extensive document production, Boxabl through counsel first became aware that Garman retained privileged communications and work product from Boxabl relating to this case and immediately notified Garman's counsel, H&S. Among the first group of privileged documents uncovered were drafts of the Mutual Dispute Resolution Agreement Garman was seeking to enforce that were prepared and exchanged between Gordon & Rees and Boxabl.  These drafts evidenced mental impressions of Gordon & Rees attorneys including their collective thoughts and recommendations regarding various clauses to the agreement and the selection of the designated arbitrator. Boxabl through counsel immediately notified H&S of the privilege issue and demanded that H&S  identify all other work product or attorney client privileged materials in its possession so that parties could work through a procedure for redacting or otherwise protecting Boxabl's protected material while Boxabl's counsel continued to assess the situation and completed its review. .

Later that day H&S responded that it searched the Garman document production for only the term "GRSM" in the title and email address of the documents and provided a spreadsheet listing the results.  It is unclear why such searches were not performed when H&S received these documents from Garman or why these documents were not identified by H&S during their review of these documents in preparation for producing them back to Boxabl's counsel.  Further assurances were not given at that time if these records would be segregated.

Boxabl through Gordon & Rees learned soon after that at least 150 attorney client privileged documents were retained by Garman and shared with H&S. *See, Spreadsheet of Privileged Materials*, **Exhibit C**.  Even after having been confronted, H&S failed to affirmatively disclose the existence of the lion's share of these privileged documents, which included several drafts of the Mutual Dispute Resolution Agreement, detailed legal invoices for several litigation and other matters concerning Boxabl (including sensitive employment and employee-related matters), legal advice to Boxabl and billing communications with GRSM, and detailed legal invoices spanning approximately one year, related to Boxabl's litigation on other matters. The legal invoices issued by Gordon Rees to Boxabl describe the mental impressions of Gordon Rees attorneys and attorney-client privileged communications in another ongoing and related litigation, against Mr. Garman's confidante, Gregory Ehlers. H&S also represents Mr. Ehlers in that litigation and it is unclear whether Mr. Garman intentionally misappropriated Gordon Rees' invoices at the request of Mr. Ehlers.[5]

Boxabl through counsel informed counsel at H&S about the Ehlers legal invoices and again asked that they wall off and cease review of all Garman document production until this matter can be resolved by the Court.

The Parties continued to meet and confer about the privileged information, and while H&S has since suggested a plan for identifying and redacting or destroying the documents, the proverbial cat is already out of the bag. For weeks or months, H&S has had access to a full

---

[5]  Plaintiff intends to file a separate motion to amend the Complaint to include additional causes of action against Mr. Garman based upon his theft of these highly confidential and privileged materials; and may seek permission to include Mr. Ehlers as an additional Defendant in this case if it is established that Mr. Ehlers conspired with Mr. Garman to obtain these records.

arsenal of Boxabl's most sensitive litigation-related documents for to two related cases they are litigating against Boxabl. The genie cannot be returned to the bottle, disqualification of counsel is the only appropriate remedy.

## II.    LEGAL ARGUMENT

### a.  GARMAN'S COUNSEL MUST BE DISQUALIFIED

In recent days, the undersigned counsel has learned that Mr. Garman and H&S have possessed and retained, without notifying Boxabl, at least 150 attorney-client privileged documents, misappropriated by Mr. Garman, upon the termination of his employment with Boxabl. These documents were privileged on their face, and would have been recognized as such by any attorney viewing them. H&S has had unrestricted possession and access to these documents since Mr. Garman provided them to H&S. H&S should have conducted a cursory review of these documents upon their receipt and notified Boxabl's counsel immediately that it was in possession of Boxabl's privileged  materials.

Notably, H&S has not stated to date that it was unaware that it was in possession of Boxabl's privileged and protected documents, nor  have H&S attorneys denied reviewing or using the information in formulating their litigation strategy.

In retaining the privileged information, Garman's counsel may have violated Nevada Rules of Professional Conduct. Specifically, Rule 4.4(a) provides that, "[i]n representing a client, a lawyer shall not … **use methods of obtaining evidence that violate the legal rights of such a person.** NV ST RPC 4.4(a).

It is professional misconduct for a lawyer to:

(**a**) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(**b**) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(**d**) **Engage in conduct that is prejudicial to the administration of justice;**
(**e**) State or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
(**f**) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. (emphasis added)

NV ST RPC Rule 8.4. Although, the Nevada Rules of Professional Conduct do not specifically address the legal duties of a lawyer who has received privileged and protected documents from a client, even within the context of inadvertent productions, courts have recognized that an attorney who receives confidential documents has ethical obligations that may surpass the limitations implicated by the attorney-client privilege and that apply regardless of whether the documents in question retain their privileged status. *See Burt Hill v. Hassan*, 2010 U.S. Dist. LEXIS 7492, CV-09-1285, *12-13 (W.D. Penn, Jan. 29, 2010); *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (2007); *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656-657 (1999).

Indeed, the generally established rule in this context is that an attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents. *Maldonado v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 138 (D.N.J. 2004); *Richards v. Jain,* 168 F.Supp.2d 1195 (W.D.Wash.2001); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994). Numerous jurisdictions have held that a failure by an attorney to abide by this rule is grounds for disqualification. *Maldonado v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 138 (D.N.J. 2004); *citing see Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir.1985) (holding that the appearance of professional impropriety can be a sufficient ground for disqualification); *Milford Power Ltd. P'ship v. New England Power Co.,* 896 F.Supp. 53, 58 (D.Mass.1995); *Williams v. Trans World*

*Airlines, Inc.,* 588 F.Supp. 1037, 1045 (W.D.Mo.1984) (stating "the potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process"); *In re Meador,* 968 S.W.2d 346, 350 (Tex.Sup.Ct.1998) (failing to comply with ABA Formal Op. 94–382 may require disqualification). To understand the full extent of H&S' possession and use of the privileged documents and confidential information depositions of their attorneys, Mr. Garman and Mr. Ehlers would be needed at a minimum; as well as a full forensic examination of Mr. Garman's electronic devices; and if the Court is not inclined to immediately grant the relief requested without further information, Boxabl requests that these depositions and forensic examinations be ordered to proceed as soon as possible.

H&S asserts that their client was a high-level employee of Boxabl.  H&S knew Mr. Garman  was accused of the misappropriation of confidential and sensitive Boxabl information. H&S apparently failed to impress upon their client, when collecting evidence from him, that he should refrain from sharing any privileged information he had taken from Boxabl illegally. Even if Mr. Garman intentionally misappropriated these items and affirmatively provided the information and documents to H&S, despite their instructions, H&S had a correspondingly affirmative obligation to notify Gordon Rees immediately.  However, rather than doing so, Defendant's counsel reserved for themselves the  opportunity to use the information, and it is reasonable to infer that H&S did exactly that: used these privileged documents to make tactical decisions over the course of this case that have irreversibly tainted this litigation.  There have been no statements or evidence provided by H&S to suggest the contrary. As such, Plaintiff respectfully requests that this Court disqualify Mr. Garman's counsel, H&S.

-12-

"District courts are responsible for controlling the conduct of attorneys practicing before them, and have broad discretion in determining whether disqualification is required in a particular case." *Brown v. Eighth Judicial Dist. Ct.*, 116 Nev. 1200, 1205 (2000). Disqualification of counsel is warranted if an appearance of unfairness or impropriety is great enough to undermine public trust and confidence in the judicial system. *Id.*, at 1204, n. 4; *Collier v. Legakes*, 98 Nev. 307, 301 (1982); *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir.1985) (the appearance of professional impropriety alone can be a sufficient ground for disqualification). Any doubt is to be resolved in favor of disqualification. *Brown*, 116 Nev. at 1205, *citing Hull v. Celanese Corp.*, 513 F. 2d 568, 570 (2d. Cir. 1975).

Here, the appearance of unfairness and impropriety is stark, and, if left unchecked, is certainly great enough to undermine public trust and confidence in the judicial system. The misappropriation of confidential information is the heart of Plaintiff's case against Mr. Garman, and this discovery reeks of further impropriety on the part of Mr. Garman. Boxabl alleges Mr. Garman misappropriated thousands of documents containing confidential information and trade secrets. Now, it appears, his counsel too may have benefited from Mr. Garman's illegal appropriation of Boxabl's confidential information, by retaining attorney-client privileged documents containing the mental impressions and analyses of counsel on matters central to this litigation – and as to Gordon Rees' strategy, mental impressions and communications with Boxabl as to the Ehlers' litigation.

In *Merits Incentives, LLC v. Eighth Judicial Dist. Court of the State of Nevada,* the Nevada Supreme Court adopted the non-exhaustive, six-factor test, first articulated by the Supreme Court of Texas in, *In re Meador*, 968 S.W.2d 346 (Tex. 1998), for determining whether counsel should be disqualified based on the firm's receipt of an opposing party's privileged information. 127

-13-

Nev. 689, 699 (2011). The factors are as follows: 1) Whether the attorney knew or should have known that the material was privileged; 2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information; 3) the extent to which the attorney reviews and digests the privileged information; 4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice; 5) the extent to which the movant may be at fault for the unauthorized disclosure; and 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney. *Merits*, 127 Nev. at 699, *quoting In re Meador*, 968 S.W.2d at 351-352.

These factors weigh heavily in favor of the disqualification of H&S.[6]

### 1) Whether the Attorney Knew or Should Have Known that the Material was Privileged.

As indicated above, Plaintiff's central allegation against Defendant is that he misappropriated and misused confidential documents and information from Boxabl, causing damage to Boxabl. It follows that one of the first tasks Mr. Garman's attorneys would or should have undertaken, was to analyze the documents and information at issue in Mr. Garman's possession, to determine the viability of Plaintiff's claims and potential defenses. They should have been especially on alert for privileged information improperly in their possession and been prepared to segregate and return any such information to Boxabl promptly. It was obvious on

---

[6] While the *Merits* Court ultimately found that disqualification was not warranted the case is clearly distinguishable from the one at bar. In *Merits*, counsel received the protected documents from an anonymous third party and quickly disclosed the same to opposing counsel. Here, defense counsel received the privileged documents from their own client, who they knew was being accused of misappropriating confidential information from Boxabl. Here it was Boxabl who discovered H&S' possession of these documents – only after H&S produced them to Boxabl in the ordinary course of discovery along with 72,000 other files.

the face of the documents that potential privilege should have been a concern.  *See, Richards v. Jain*, 168 F. Supp. 2d 1195, 1203 (W.D. Wash. 2001) ("Shortly thereafter Haegele reviewed the documents and selected "relevant" documents for review by the attorneys. Haegele "knew" or should have known that these materials were privileged.") Communications came from GRSM email addresses, or included invoices on clear GRSM letterhead. The name of "Peter Strniste" and other GRSM counsel appears numerous times throughout the materials.

This is particularly true regarding the redlined Arbitration Agreement, which, as discussed above, included strategy comments by Boxabl's counsel, was attorney-client privileged on its face, contained the mental impressions of Gordon Rees' attorneys and is central to Defendant's recent request for Arbitration. It follows that any claim by counsel that they did not identify it as such and digest it, is simply implausible. Moreover, the enforceability of the Arbitration Agreement is a heavily contested issue in this case, and the privileged document provided opposing counsel with insights into Boxabl counsel's analysis of the enforceability of various provisions of the Agreement, which, in turn, provided opposing counsel with a grossly unfair tactical advantage.

### 2) Promptness within which the Attorney Notifies Opponent as to the Possession of the Protected Information.

This factor weighs overwhelmingly in Boxabl's favor, as opposing counsel **never** informed Plaintiff that it was in possession of the privileged material. In fact, it was not until the undersigned counsel began reviewing the 72,000 files and documents produced by Garman in response to Plaintiff's Discovery requests, that counsel found the protected information. Had Boxabl's counsel not notified Garman's counsel after discovering the privileged information, it

is unclear what if any actions would have been undertaken by H&S to attempt to remediate the problem.

### 3) The Extent to Which the Attorney Reviewed and Digested the Information

As discussed above, it is simply implausible to suggest Mr. Garman's counsel did not review and fully digest the information contained within the approximately 150 privileged documents. Counsel was in possession of the documents for likely over one year, and, as with any document in an attorney's possession relevant to ongoing litigation, it can be inferred that counsel read, digested and incorporated the confidential information into its litigation strategy.

By way of a more specific example, H&S recently filed a Motion to Compel Arbitration (ECF NO.80) in which they argue, inter alia, that Garman did not know of the arbitration agreement until recently. It is hard to believe they would not have first confirmed this representation to the Court by checking with their client or reviewing the 72,000 documents in their possession, which they subsequently produced.  H&S disclosed that these documents were loaded on a searchable document platform.  It would have been simple for H&S to search for the words "arbitration" or "dispute resolution," which would have revealed not one, but multiple versions of the Agreement H&S represented to this Court, their client did not have.

Also in advance of producing the 72,000 files, Garman's counsel asked for and received a deadline extension to produce the documents ostensibly because Garman's counsel needed additional time to review the 72,000 files and prepare the responses. It stands to reason such response preparation would entail some level of review of the documents produced. This is particularly likely where, as here, Garman took the position he was withholding certain

documents and information as overbroad to the needs of the litigation.[7]  *See generally* Garman

Motions for Protective Order (ECF No. 58, 59); **Exhibit B** – *Garman Responses to Document*

*Requests*.

### 4) The Extent to Which the Disclosure of the Information would Prejudice the Opponent.

The fourth factor also weighs heavily in favor of disqualification. This is not a case like in

*Merit* where one isolated privileged document came into the purview of the attorney.  The

approximately 150 privileged documents contained information regarding Boxabl's counsel's

legal strategies, impressions and analyses found within attorney billing summaries,

correspondence, emails, invoices and drafts of documents relevant to the ongoing litigation.

These are only the documents we presently know about – as Garman withheld documents

determined by him to be irrelevant. The known privileged documents included various iterations

of drafts of the employment handbook which Garman was subject, including commentary on the

same about possible situations that should be or not be included. Also included were Gordon

Rees' attorneys edits on Confidentiality Agreement clauses similar to those currently at issue.

Legal advice emails from Gordon Rees employment attorneys. The Ehlers invoices, while

providing a marked tactical advantage in the Ehlers case to H&S, also have adverse strategy

implications for this instant case. Said invoices span for a wide ranging period of at least February

2022 through December 2022 and provide a road map of early to mid-stage case handling

strategies and procedures of Boxabl's counsel, in litigation where the facts are starkly similar and

in some cases overlapping.  For example they illustrate Boxabl's strategy in another litigation;

---

[7]  Mr. Garman should be ordered to produce to Boxabl all documents which were downloaded or retained from Boxabl so that Boxabl and its attorneys can understand the full extent of his data breach and misappropriation of documents.

Boxabl's identification and investigation of third parties as potential co-conspirators of the adverse party, descriptions of their problematic acts being analyzed, and descriptions of follow up strategies to that investigation.  The Ehlers invoices also illustrate procedures undertaken by Boxabl's counsel in evaluating the action and claims made against Boxabl; communications concerning case venue and removal strategy; certain fact investigation efforts undertaken against adverse litigants. It is well established that legal invoices like these which provide "highly detailed itemizations of all work performed on [a client's] behalf"… "would necessarily reveal the nature of legal services provided" and are therefore privileged. *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 214 (N.D. Cal. 1986); see, *In re Grand Jury Witness,* 695 F.2d 359, 362 (9th Cir.1982).

Also as discussed above, the enforceability of the Arbitration Agreement is a contested issue in this case, and the privileged draft of this agreement provided opposing counsel with insights into Boxabl counsel's analysis incident to the development of the agreement, enforceability of various provisions of the Agreement, strategy recommendations for arbitration choices or the like, which, in turn, provided opposing counsel with a grossly unfair tactical advantage.

The disclosure of this privileged information, documents, communications and mental impressions has and will continue to prejudice Boxabl since  H&S has, and has had, knowledge of, and insight into, Boxabl's strategies, and its views on many of the facts and merits of the case. While the documents must be returned to Boxabl, this will not eliminate or mitigate the prejudice to Boxabl because H&S cannot be expected to purge the privileged information from their collective memory, or not rely on it in making tactical decisions in the ongoing litigation.

### 5) **The Extent to Which the Disclosing Party May be Found at Fault for Disclosure.**

Here, both Defendant and his counsel are fully and completely at fault for the disclosure. The documents in question were amongst 72,000 computer files, and 53,301 pages of documents and ESI misappropriated from Boxabl by Mr. Garman, which he obtained by improperly accessing Plaintiff's servers and file system and which he subsequently turned over to his counsel.  Mr. Garman represented in his Separation Agreement that all such files had been returned to Boxabl. He signed a sworn affidavit under the pains of perjury stating he did not violate his Confidentiality Agreement with Boxabl. He received $50,000 for these agreements.

Boxabl cannot reasonably be said to be at fault for dissemination of the privileged documents. Boxabl requested Garman sign a Confidentiality Agreement at the onset of Garman's employment which laid out the importance of keeping Boxabl's sensitive information confidential. Boxabl requested Garman sign a Separation Agreement containing confidentiality provisions upon his termination and also that Garman execute an affidavit under the pains and penalties of perjury certifying that Garman did not retain confidential information. Garman warranted in that Separation Agreement in Paragraph 1:"The Employee warrants and represents that they have returned all Employer Group property, including identification cards or badges, access codes or devices, keys, laptops, computers, telephones, mobile phones, hand-held electronic devices, credit cards **electronically stored documents or files, physical files**, and any other Employer Group property in the Employee's possession." *Amended Complaint* (ECF No. 34), *Exhibit B*. (Emphasis added). Boxabl paid Garman a $50,000.00 severance payment conditioned upon these assurances and for maintaining confidentiality.  It is hard to see what more Boxabl could have reasonably done to prevent such unlawful disclosures, except not have hired Mr. Garman in the first place.

### 6) The Extent to Which Non-Movant May Suffer Prejudice from Disqualification.

With regard to the final factor, this case is still in relatively early stages of litigation, as Mr. Garman's counsel have fought tirelessly to prevent Boxabl from deposing Mr. Garman or any third party witnesses by filing motions to dismiss, motions for protective orders and now a motion for arbitration. As such, the parties have not yet taken depositions and have exchanged initial but not supplemental written discovery. Boxabl will agree to whatever reasonable extensions of case deadlines are required to accommodate the acclamation of new counsel for Garman. Furthermore, the prejudice that Defendant would suffer as a result of disqualification would be the result of both his and his counsel's conduct. Simply put, the conduct of Mr. Garman and potentially his counsel here was extraordinary, willful and in bad faith. Defendant's counsel gained unauthorized access to materials that were clearly privileged and misappropriated by their own client, and then presumably surreptitiously used them over the course of the last year, to gain the maximum adversarial advantage.

### 7) Further analysis in support of disqualification of H & S

In addition to Nevada Supreme Court precedent, there is significant authority from other jurisdictions holding that an attorney may be disqualified for the unauthorized use or retention of an adversary's privileged information, specifically (as here) when the attorney receives the documents from the attorney's client, and that attorney then fails to immediately notify opposing counsel of the client's misconduct. *See Maldonado v. New Jersey*, 225 F.R.D. 120, 125-126 (D.N.J. 2004) (attorney's client obtained confidential letter from opposing party to its counsel, have the letter to his attorney, and attorney did not disclose or return the document); *In re Marketing Investors Corp.*, 80 S.W.3d 44, 46-47 (Tex.App. 1998) (attorney's client took

documents from opposing party in violation of employment agreement and gave to his attorney who kept copies and refused to agree not to use documents despite protective order); *Castellano v. Winthrop*, 27 So.3d 134, 135 (Fla.Dist.Ct.App.2010) (attorney's client illegally obtained opposing party's flash drive and attorney used information contained on it to file a motion to vacate a final order before notifying opposing counsel of receipt).

Here as explained further above, H & S had access to privileged material for potentially one year.  Given H&S's failure to immediately disclose their possession of these documents, it is probable counsel reviewed and relied upon them.  Furthermore, it is troublesome that even when confronted about the privileged documents, H&S initially attempted to underreport the scale of the problem. It follows that in light of Garman and his attorneys' conduct, and in light of the unfair advantage gained by Defendant as a result of the knowing misappropriation and retention of Plaintiff's privileged work product and the taint of unfairness it places upon further case proceedings, disqualification of H&S is both warranted and necessary[8]to ensure justice is done.

### b. THIS COURT SHOULD ALSO IMPOSE SANCTIONS SUPPRESSING ANY ARGUMENTS RELATED TO THE PRIVILEGED INFORMATION

_____

[8] *See In re* Weinberg, 132 A.D.2d 190, 208-09 (N.Y. App. Div. 1987) (citations omitted) ("To have imposed a sanction short of disqualification in this case would have sent a very dangerous message to the Bar. We would in effect have said, you may ignore the rules of discovery and the ethical precepts governing attorney conduct, and thereby, elicit the disclosure of confidential material highly relevant to your case, and if by chance you are discovered and your adversary has the resolve and resources to pursue the matter, we will do no more than suppress the improperly acquired material and require you to pursue discovery in a proper manner ....The offending lawyer or firm is not punished in any way by being directed not to rely on improperly obtained information and to henceforth obey rules which should have been observed all along; he is simply held to the standard applicable to all attorneys. He may, moreover, be in a better position than if he had obeyed the rules because although the improperly acquired materials are suppressed, he will inevitably retain information therefrom which he will be able to use to guide his conduct of the litigation in ways no court can effectively regulate.").

All federal courts are vested with inherent powers which enable them to manage their cases and courtrooms effectively and to ensure obedience to their orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1990). In fact, "courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* at 43. A court's inherent power to supervise and sanction parties before it are governed not by rule or statute, but by the inherent control necessarily vested in courts to achieve the orderly and expeditious disposition of cases. *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1961). Through this power, courts have the ability to punish conduct both within their confines and beyond, regardless of whether that conduct interfered with trial. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). It follows that courts have the ability to address the full range of litigation abuses through their inherent powers. *See Chambers*, 501 U.S. at 46. As a function of these powers, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines. *See Chambers*, 501 U.S. at 44-45; *see also F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136-37 (9th Cir. 2001).  Courts also have authority to preclude a party's use of evidence improperly obtained.  *See In re Mktg. Invs. Corp.,* 80 S.W.3d 44, 48 (Tex. App. 1998).

Here, sanctions are clearly warranted. The documents in question were inappropriately and surreptitiously taken by Mr. Garman.  Opposing counsel's knowing retention of Plaintiff's misappropriated privileged documents and information, without disclosing the same, was egregious and a hindrance to justice.  This is not a case where one, seemingly innocuous document slipped through the cracks; opposing counsel retained at least 150 clearly privileged

and confidential documents belonging to Boxabl, which were included amongst thousands of documents opposing counsel knew Boxabl alleges were misappropriated by its client, Mr. Garman.[9] The documents provided counsel with unfair insights into Boxabl's legal strategies, analyses, confidential communications, and impressions, which have surely already benefited Mr. Garman (and Mr. Ehlers)[10], and which will continue to provide him with an unfair advantage in the ongoing litigation. For these reasons, Plaintiff respectfully requests that this Court levy any such sanctions which it deems appropriate on Mr. Garman and his counsel. Such sanctions should include but not necessarily be limited to precluding Garman from relying on or utilizing the executed Arbitration Agreement, and all documents and information Garman improperly misappropriated from Boxabl and retained after employment and all costs and fees associated with this motion and all depositions, investigations of Garman's electronic devices and discovery required to understand the extent of the misappropriation.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff, Boxabl, Inc., respectfully requests that this Honorable Court disqualify opposing counsel, and enter an Order of sanctions as indicated above and as is just and appropriate.

Dated: July 8, 2024

---

[9]  The extent of privileged documents, protected communications and attorney mental impressions is not yet known because Mr. Garman withheld documents from his production and Boxabl has not had the opportunity to depose Mr. Garman, Mr. Ehlers and Mr. Garman's attorneys regarding these issues; and requests that the Court permit these depositions to proceed so that Boxabl may understand the gravity of this data breach and misappropriation of confidential information and documents.

[10] Boxabl intends to file a similar motion in the Ehlers litigation.

Respectfully submitted,

/s/ *Cara Sgobba*

Peter E. Strniste, Jr., Esq. (admitted *pro hac vice*)
Cara M. Sgobba, Esq. (admitted *pro hac vice*)
Lori N. Brown, Esq. (SBN 8858)
**GORDON REES SCULLY MANSUKHANI, LLP**
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: pstrniste@grsm.com
Email: lbrown@grsm.com
Email: csgobba@grsm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on today's date of July 8, 2024, the foregoing Motion with exhibits was served via the Court's CM/ECF system to counsel for all parties of record.

/s/    *Cara Sgobba*
An Employee of Gordon Rees
Scully Mansukhani, LLP